**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| **EQUAL EMPLOYMENT OPPORTUNITY COMMISSION** | **CIVIL ACTION** |
| **VERSUS** | **NO. 12-557** |
| **SIGNAL INTERNATIONAL, L.L.C.** | **SECTION "E" (3)** |

**ORDER**

On July 31, 2013, the EEOC's Motion for Protective Order [Doc. #207] and the Motion of Defendant Signal International, L.L.C. for Protective Order [Doc. #208] came on for oral hearing before the undersigned. Present were Gerald Miller and Julie Bean on behalf of plaintiff EEOC, Daniel Werner and Thomas Fritzsche on behalf of plaintiffs-intervenors, and Erin Hangartner and Hal Ungar on behalf of defendant Signal International, L.L.C. After the oral hearing, the Court took the motion under advisement. Having reviewed the motion, the opposition and the case law, the Court rules as follow.

## I. Background

This is a companion case to *David v. Signal International, L.L.C.*, and this Court has repeated the factual background on numerous occasions and will not do so again. *See David v. Signal Int'l, L.L.C.*, Civ. A. No. 08-1220, 2012 WL 4344540 (E.D. La. Sept. 21, 2012).

## II.     The EEOC's Motion for Protective Order [Doc. #207]

### A.     The EEOC's Contentions

The EEOC first asks the Court to grant its motion to protect information that has an inherently *in terrorem* effect. It asks the Court to prohibit defendants from inquiring into any individual's immigration history or status. Citing case law, it notes that courts have held that social security numbers ("SSNs"), employment histories, places of birth, places of residence, post-Signal employment history and income, information about family members and tax documents have an *in terrorem* effect. It does not dispute that defendants are entitled to any alias used during an individual's employment with them.

The EEOC argues that the immigration status of any individual has no bearing on his entitlement to protection under Title VII and Section 1981. It contends that even were the Court to find the information relevant, that relevance is outweighed by the risk of injury and prejudice to any individual. It maintains that the production of such information will chill or outright preclude some of the individuals' claims. The EEOC argues that courts have recognized that the production of such information may even preclude other workers from maintaining their claims, thus limiting the enforcement of the federal civil rights statutes. It contends that it must be able to ensure all of the individuals' involvement in this lawsuit, their availability for discovery and trial and their willingness to communicate with the government as witnesses and victims.

The EEOC also notes that there is a widely-recognized policy against the disclosure of tax returns. It maintains that forcing such disclosure threatens the effective administration of our tax laws given the self-reporting of income and would deter future plaintiffs from coming forward. The EEOC contends that this reasoning applies to any document that would reveal income received or

sources of income (other than that received from Signal). It maintains that Signal can not demonstrate the relevance of such documents. The EEOC argues that courts have routinely held that any relevance of a civil rights plaintiff's employment history is outweighed by the risk of harm posed to the plaintiff.

The EEOC notes that the rest of the protective order sets out the procedure for all parties to follow in handling documents that a party deems to be confidential.

**B. Signal's Opposition**

Signal notes that this Court earlier denied it access to T-visa applications and other immigration-related documents in the related *David* lawsuit. Signal also notes that when it did so, the Court stated that the parties were concentrated on class-certification discovery, and that Signal may be able to establish such information's admissibility at trial during a later phase. In the order denying class certification, the District Court noted that it did not believe that the immigration evidence would remain collateral for purposes of trial. Signal notes that the District Court noted that plaintiffs were complicit with Signal when entering the country. This, Signal contends, alters the balance in its favor.

Noting that this Court earlier relied on a decision from the Ninth Circuit, Signal contends that the Fifth Circuit has never examined nor adopted that decision. *See Rivera v. NIBCO, Inc.*, 364 F.3d 1057 (9th Cir. 2004). Signal doubts that the Fifth Circuit would adopt the Ninth Circuit's sweeping statement that never in an employment lawsuit will this information be relevant.

Signal maintains that it simply seeks to enforce its constitutional right under the Fifth Amendment to impeach its antagonists with powerful evidence that is probative of bias or lack of credibility. Signal contends that the evidence is squarely rooted in the litigation's origins. As the

District Court recognized, plaintiffs knew that green cards were difficult to obtain, and they could only obtain them from the United States government. The District Court also recognized that some of the plaintiffs were willing to misrepresent to obtain entry to the United States. An example of such misrepresentation, Signal argues, would be to devise a story of trafficking to remain here with their families. The District Court also noted that given the plaintiffs' own complicity in doing whatever was necessary to enter this country, Signal (and others) may be able to prove that the injuries alleged were not proximately caused by defendants' conduct. The District Court also pointed out that at least one plaintiff had worked in this country before under the H-2B visa and would have understood the temporary nature of such a visa.

Signal maintains that it and the EEOC must work together to craft a plan to utilize the information with as little collateral damage as possible. It argues that it is unreservedly willing to minimize this Court's and the EEOC's concerns.

Signal contends that it has a right to full, probing and effective cross-examination of every member of the class as to motive. It maintains that the EEOC potentially intends to present as witnesses at trial the approximately 500 class members here, and it has the right to cross-examine them to determine whether they invented the appalling conditions to bolster their trafficking claims.

Signal consents to the majority of the remaining protective order, but notes that it does not consent to the following: "Finally, as a federal government agency, the EEOC has substantial obligations to disclose documents not prohibited from disclosure by law, or valid reason." Signal notes that the EEOC cites to the Freedom of Information Act ("FOIA") as authority but contends that FOIA exempts federal courts from its provisions.

## III. The Motion of Defendant Signal International, L.L.C. for Protective Order [Doc. #208]

### A. Signal's Contentions

While this memorandum is near identical to its opposition to the EEOC's motion, Signal notes in the section on handling the confidential information that it seeks to avoid the abuse of the discovered material. As an example, it points to plaintiffs' appearances on Dan Rather Reports to lambaste it. Citing case law, Signal notes that the United States Supreme Court and the Fifth Circuit have held that parties do not have a First Amendment right to disseminate, in advance of trial, information gained through the pre-trial discovery process. Courts that have ruled similarly have held that parties may only publish, disseminate or use the information when necessary to prepare for or to try the case. Signal also seeks to protect the privacy of non-parties in its submitted proposed protective order.

### B. The EEOC's Opposition

After detailing alleged examples of Signal's intransigence during the initial-discovery phase – *i.e.*, refusing to produce documents, refusing to produce documents in a certain format, refusing to meet with IT employees to discuss electronically-stored information ("ESI") – the EEOC notes that Signal is surreptitiously asking the Court to enter the protective orders from the *David* litigation, albeit it without the *in terrorem* provisions. The EEOC also notes that Signal asks the Court to adopt the protective order [Doc. #1352] in which this Court declined to order Signal to re-produce documents in their native format. The EEOC argues that it is not bound by *David*, and because Signal surreptitiously asks the Court to adopt the order for that reason, the EEOC contends that Signal has waived the issue. The EEOC argues that the two lawsuits are separate and distinct, have not been consolidated, and it has been afforded no opportunity to be heard on the protective orders

in the *David* litigation.

The EEOC maintains that there is no case law to support the blanket adoption of protective orders in another lawsuit. It argues that it has no idea to which documents each specific protective order refers, and while asking the Court to adopt all of the *David* protective orders, Signal lists only three (there were more). The EEOC notes that under Rule 34, courts routinely order parties to produce ESI in native format, with metadata attached.

The EEOC contends that the District Court's class-certification decision in *David* is of no moment as it was not a party and is not bound by that adverse decision. It notes that this Court determined that current immigration status is irrelevant because of its *in terrorem* effect, and the relevancy, if any, did not outweigh the public interest in allowing employees to enforce their rights. It maintains that this Court has already rejected Signal's argument that such evidence bears on motive or bias or credibility.

Noting Signal's case law on which it now relies, the EEOC argues that such case law was decided in 1972 and 1984, and it is thus not an intervening change in the law. The EEOC also cites its own Supreme Court and lower court case law in which the courts note that trial courts possess wide latitude to impose restrictions on the cross-examination of a witness.

The EEOC maintains that Signal's requested provision barring the dissemination of information is vague, overbroad and unworkable, and that the provision does not appear to bar Signal from dissemination. The EEOC contends that such a provision is unsupported by the law. Signal tried this once before, and the District Court denied it. The EEOC argues that Signal has failed to demonstrate good cause for such an order. It maintains that Signal can not demonstrate good cause because there has been no publicity in the last 18 months.

With regard to the addresses and telephone numbers of former Signal employees, the EEOC has no objection to the provision if it is modified to allow dissemination to persons deemed, in good faith by counsel, necessary to the prosecution of the lawsuit.

## III. Intervenor's Combined Opposition to Signal's Motion for Protective Order and in Support of the EEOC's Motion For Protective Order [Doc. #212]

Intervenors note that Signal's arguments presuppose that the outcome and findings in this lawsuit or any other civil action bear on the requirements for a T or U visa.[1] They maintain that any individual may apply for a T or U visa, and none of the factors relates to participation or victory in a civil action. Intervenors thus did not need to sue – and thus did not need to contrive their deplorable conditions – to obtain a T or U visa.

Intervenors allege that Signal seeks to simply punish them – certainly by inquiring into information regarding their wives and children. Intervenors note that Signal has in the past made it clear that it would contact immigration officials and urge enforcement actions against them.

Intervenors also contend that Signal's desire to impose a blanket ban on dissemination is unsupported by the law. Distinguishing the case law on which Signal relies, *Seattle Times Co. v. Rhinehart*, 467 U.S. 20 (1984), they note that there, the moving party sought to impose a ban on specific dissemination related to their donors, not a blanket ban of all information produced during discovery.

Intervenors argue that the blanket "attorneys' eyes only" designation as to home addresses and telephone numbers is overbroad, given that attorneys must sometimes discuss this information with their staff, clients and expert witnesses. Intervenors also object to the suggestion that counsel

1 The intervenors here are – generically – the plaintiffs in the related *David* lawsuit.

must serve subpoenas on a non-party should it wish to speak to the non-party and use the home address and telephone number with respect to serving such a subpoena. Such a provision would delay litigation and increase expense.

## IV.    Law and Analysis

The Federal Rules state that before a protective order may issue, the movant must show good cause why justice requires an order to protect a party or person from "annoyance, embarrassment, oppression, or undue burden or expense." *See* Fed. R. Civ. P. 26(c)(1). To make a showing of good cause, the movant has the burden of showing the injury "with specificity." *Pearson v. Miller*, 211 F.3d 57, 72 (3d Cir. 2000). In other words, the party seeking the protective order must show good cause by demonstrating a particular need for protection. *See Cipollone v. Liggett Group, Inc.*, 785 F.2d 1108, 1121 (3d Cir. 1986). To establish good cause, a party seeking a protective order must set forth particular and specific demonstrations of fact, as distinguished from stereotyped and conclusory statements. *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 102 n.16 (1981); *In re Terra Int'l, Inc.*, 134 F.3d 302, 306 (5th Cir. 1998). Broad allegations of harm, unsubstantiated by specific examples or articulated reasoning, do not satisfy the Rule 26(c) test. *See Cipollone*, 785 F.2d at 1121 (citing *United States v. Garrett*, 571 F.2d 1323, 1326, n.3 (5th Cir. 1978)) (requiring "a particular and specific demonstration of fact as distinguished from stereotyped and conclusory statements"); *Gen. Dynamics Corp. v. Selb Mfg. Corp.*, 481 F.2d 1204, 1212 (8th Cir. 1973); 8 C. Wright, A. Miller & R. Marcus, Federal Practice and Procedure § 2035 (Supp. 1985). Moreover, the alleged harm must be significant, not a mere trifle. *See Cipollone*, 785 F.2d at 1121 (citing *Joy v. North*, 692 F.2d 880, 894 (2d Cir.1982)).

This Court finds the EEOC's argument persuasive with regard to the current immigration

status of intervenors. Even if intervenors' current immigration status was relevant to the claims asserted by the EEOC, discovery of such information would have an intimidating effect on an employee's willingness to assert his workplace rights and subject such an employee to potential deportation. *See, e.g., Rivera v. NIBCO, Inc.*, 364 F.3d 1057, 1065 (9th Cir. 2004) ("[W]ere we to direct district courts to grant discovery requests for information related to immigration status in every case involving national origin discrimination under Title VII, countless acts of illegal and reprehensible conduct would go unreported."); *In re Reyes*, 814 F.2d 168 (5th Cir. 1987) (granting mandamus and ordering district court to withdraw portion of discovery order allowing discovery of immigrants' current immigration status). The case law substantiates these fears. *See, e.g., Sure-Tan, Inc. v. NLRB*, 467 U.S. 883 (1984) (noting that employer reported five undocumented workers after they voted in favor of union representation); *Does I thru XXIII v. Advanced Textile Corp.*, 214 F.3d 1058, 1062-63 (9th Cir. 2000) (allowing plaintiffs to plead their claims anonymously due to their fear of retaliatory deportation); *Fuentes v. INS*, 765 F.2d 886, 887 (9th Cir. 1985) (noting that employer reported undocumented workers he had employed for three years for less than minimum wage when they filed suit to recover wages owed), *vacated on other grounds by Fuentes v. INS*, 844 F.2d 699 (9th Cir. 1988); *Singh v. Jutla & C.D. & R's Oil, Inc.*, 214 F. Supp. 2d 1056, 1057 (N.D. Cal. 2002) (noting that employer recruited undocumented worker and then reported him to the INS after he filed an FLSA claim for unpaid wages); *Contreras v. Corinthian Vigor Ins. Brokerage, Inc.*, 25 F. Supp. 2d 1053, 1055 (N.D. Cal. 1998) (noting that employer reported an undocumented worker after she filed an FLSA claim for unpaid wages).

This is an action for unpaid wages and overtime for work actually performed for Signal. Courts have recognized the *in terrorem* effect of inquiring into a party's immigration status and

authorization to work in this country when irrelevant to any material claim because it presents a "danger of intimidation [that] would inhibit plaintiffs in pursuing their rights." *Liu v. Donna Karan Int'l, Inc.*, 207 F. Supp. 2d 191, 193 (S.D.N.Y. 2002) (citations omitted). Here, intervenors' current immigration status is a collateral issue. The protective order becomes necessary as "[i]t is entirely likely that any undocumented [litigant] forced to produce documents related to his or her immigration status will withdraw from the suit rather than produce such documents and face . . . potential deportation." *Topo v. Dhir*, 210 F.R.D. 76, 78 (S.D.N.Y. 2002) (quoting *Flores v. Albertsons Inc.*, No. CV100515AHM, 2002 WL 1163623, *6 (C.D. Cal. Apr. 9, 2002)); *see also EEOC v. First Wireless Group, Inc.*, 225 F.R.D. 404 (E.D.N.Y. 2004) (holding that good cause shown for protective order where disclosure of immigration status would cause embarrassment, potential criminal charges, or deportation if status was discovered to be illegal).

The EEOC – and intervenors – have demonstrated good cause under Rule 26(c) for a protective order to prohibit the disputed information. This Court has already held twice – and been upheld once in holding – that the disclosure of the information that Signal seeks would create an *in terrorem* effect on interevenors. Courts frequently grant protective orders to protect an immigrant's current immigration status. In *Topo*, for example, the court noted:

> Plaintiff asserts that by seeking information on her immigration status, defendants are attempting to exploit the discovery process in an attempt to threaten plaintiff's continued prosecution of her claims. The court need not find such ominous undertones in defendant's discovery requests. Plaintiff's fears of her immigration status deterring further prosecution of her claims are well-founded. Courts have generally recognized the in terrorem effect of inquiring into a party's immigration status when irrelevant to any material claim. In particular, courts have noted that allowing parties to inquire about the immigration status of other parties, when not relevant, would present a "danger of intimidation [that] would inhibit plaintiffs in pursuing their rights." *Liu v. Donna Karan International, Inc.*, 207 F. Supp. 2d 191, 193 (S.D.N.Y. 2002) (citations omitted). Were plaintiff's immigration status relevant to prove a material aspect of the defense, a protective order would not be appropriate.

> However, when the question of a party's immigration status only goes to a collateral issue, as in this case, the protective order becomes necessary as "[i]t is entirely likely that any undocumented [litigant] forced to produce documents related to his or her immigration status will withdraw from the suit rather than produce such documents and face ... potential deportation." *Flores v. Albertsons Inc.*, 2002 WL 1163623, *5 (C.D. Cal. 2002). Although the cases addressing this issue typically relate to the Fair Labor Standards Act, the underlying principle is still the same. When the potential for abuse of procedure is high, the Court can and should act within its discretion to limit the discovery process, even if relevancy is determined. The court finds, however, for the reasons listed below that, at best, plaintiff's immigration status is a collateral issue not relevant to any material aspect of the case.

210 F.R.D. 76, 78 (S.D.N.Y. 2002). Here, intervenors' immigration status is a collateral issue and does not go the merits of Signal's defense. This Court can not fathom in what way any such information would be relevant to the issues in this suit. Given that intervenors have invoked the Fifth Amendment before, Signal will not be able to use evidence of prior crimes to impeach intervenors at trial. In addition, the grounds for inadmissibility are irrelevant to any claim or defense here. The reasons why a particular intervenor may be refused admission to this country will not impact any evidence submitted at trial. Further, any information on family members who are not parties to this lawsuit is clearly irrelevant.

Signal asserts that information as to current immigration status would allow them to test intervenors' credibility. As the Court has noted before, credibility is always at issue. That, in and of itself, does not warrant an inquiry into the subject of current immigration status when such examination would impose an undue burden on private enforcement of employment discrimination laws. *See Rengifo v. Erevos Enters., Inc.*, No. 06 Civ. 4266, 2007 WL 894376 (S.D.N.Y. Mar. 20, 2007) (concluding that the opportunity to test the credibility of a party based on representations made when seeking employment does not outweigh the chilling effect that disclosure of immigration status has on employees seeking to enforce their rights); *Avila-Blum v. Casa de Cambio Delgado,*

*Inc.*, 236 F.R.D. 190, 192 (S.D.N.Y. 2006). "While documented workers face the possibility of retaliatory discharge for an assertion of their labor and civil rights, undocumented workers confront the harsher reality that, in addition to possible discharge, their employer will likely report them to the INS and they will be subjected to deportation proceedings or criminal prosecution." *Rivera*, 364 F.3d at 1064. In *Rivera*, the court observed that granting employers the right to inquire into immigration status in employment cases would allow them to implicitly raise threats of such negative consequences when a worker reports illegal practices. *Id.* at 1065. And while Signal maintains that the Fifth Circuit would not adopt the reasoning underlying *Rivera*, this Court notes that the Fifth Circuit has on one occasion issued a writ of mandamus – an extraordinary remedy – to order a district court to withdraw that portion of its discovery order that allowed discovery of immigrants' current immigration status. *Reyes*, 814 F.2d at 170-71. As it has before, this Court finds that Signal's opportunity to test the credibility of plaintiffs does not outweigh the public interest in allowing employees to enforce their rights.

That the parties are not in class-certification discovery proceedings is of no moment. The case law cited by this Court does not distinguish between class-certification and merits-based discovery to arrive at their conclusions. Indeed, in many of the cases, it is not readily apparent that the plaintiffs sought class certification. The Court finds that the underlying reasoning and analysis of those courts apply equally here at this stage of the litigation. Accordingly, the Court grants the EEOC's motion with respect to this issue. This holding includes the non-disclosure of intervenors' tax returns. *Galaviz-Zamora v. Brady Farms, Inc.*, 230 F.R.D 499, 503 (W.D. Mich. 2005).

As noted above, Signal also challenges the EEOC's inclusion of the following language in the procedure to be followed with regard to confidential documents: "Finally, as a federal

government agency, the EEOC has substantial obligations to disclose documents not prohibited from disclosure by law, or valid reason." Signal cites *Valenti v. U.S. Department of Justice*, 503 F. Supp. 230 (E.D. La 1980), as support for its argument that such language should be stricken from the proposed protective order because the Freedom of Information Act ("FOIA") does not apply to courts of the United States. The Court finds *Valenti* distinguishable.

The FOIA requires that each agency of the government shall make available to the public information of a variety of kinds consisting mainly of agency records. 5 U.S.C. § 552(a)(2)-(3). In defining the term "agency," the Act itself specifically exempts "the courts of the United States" from the definition. *Id.* § 551(1)(B). In *Valenti*, the question before the court was whether a witness before the grand jury was entitled to a transcript of his testimony before the grand jury under the FOIA. *See id.* at 231-33. The court, relying on Section 551(1)(B), ultimately concluded that he was not because the grand jury is an arm of the court, and the plaintiff's testimony was thus generated by a court – and not an agency – of the United States. *See id.* at 232-33.

That is not the situation here. The proposed protective orders in this lawsuit will not protect from disclosure records generated by a court of the United States. The records involved in the discovery process will be generated by the parties, one of which is an agency of the United States and subject to the FOIA. *Valenti* is thus inapposite.

Notwithstanding this finding, however, the Court finds that a protective order prohibiting parties from publicly disseminating information gleaned through the pre-trial discovery process is warranted here. Given the highly sensitive nature of this lawsuit and the potential for abuse through the media, the Court finds Signal's arguments persuasive on this point. The case law is rife with support for the argument that no party to a lawsuit has a First Amendment right to disseminate

information obtained through the pre-trial discovery process, and this Court's discretion is broad on this point. *See, e.g. Seattle Times Co. v. Rhinehart*, 467 U.S. 20 (1984) (holding that when "a protective order is entered on a showing of good cause as required by Rule 26(c), is limited to the context of pre-trial civil discovery, and does not restrict the dissemination of the information if gained from other sources, it does not offend the First Amendment."); *Harris v. Amoco Prod. Co.*, 768 F.2d 669 (5th Cir. 1985) (holding that the EEOC was not entitled to "receive full use of material discovered as an intervenor, whether that use is further investigation, litigation, or interagency cooperation."); *Greene v. Thalhimer's Dep't Store*, 93 F.R.D. 657, 661 (E.D. Va. 1982) (limiting use of discovered material relating to EEOC conciliation efforts).

While the Court recognizes that Signal's request is broad – and the EEOC and intervenors object to such an expansive protective order – the Court also recognizes the highly sensitive nature of this lawsuit. There has already been substantial media coverage of this lawsuit, and there is the potential for more. This Court finds that the material gleaned through the pre-trial discovery process should be limited to the preparation for and use at trial and for no other purpose until this dispute is resolved, through trial or settlement. This Court can not fathom why the dissemination of any information obtained through the discovery process outweighs the privacy interest of the parties and non-parties at this time. And the EEOC's interest in complying with FOIA is of no moment pending trial. *See Harris*, 768 F.2d at 685. The EEOC's obligations under FOIA are limited to requests by the public, which at this time are negligible at best concerning this lawsuit. There is no mandatory dissemination requirement under the FOIA.

With regard to the production of electronically-stored information ("ESI"), the Court notes that Rules 34 governs the production of such data. The parties are the masters of their production

requests, and they may request ESI in any format allowed under the rules. *Autotech Techs. Ltd. P'ship v. Automationdirect.com, Inc.*, 248 F.R.D 556, 560 (N.D. Ill. 2008). The protective order in *David* [Doc. #1352] is inapplicable here.

With regard to the addresses and telephone numbers of former Signal employees, the Court finds that the parties may disseminate such information to persons deemed in good faith necessary to the prosecution of the lawsuit. And lastly, the Court will not order the parties to serve a subpoena on a non-party should it wish to speak said non-party. Such a practice would be a waste of the Court's and the parties' resources.

**V. Conclusion**

For the foregoing reasons,

**IT IS ORDERED** that the EEOC's Motion for Protective Order [Doc. #207] and the Motion of Defendant Signal International, L.L.C. for Protective Order [Doc. #208] are GRANTED IN PART and DENIED IN PART as outlined above. The parties shall meet and confer **no later than ten (10) days from the date of this Order** to confect a protective order in conformity with this Court's reasoning, and **no later than ten (10) days from said date**, the parties shall file said protective order for this Court's approval.

New Orleans, Louisiana, this 10th day of September, 2013.

Daniel E. Knowles, III

**DANIEL E. KNOWLES, III**
**UNITED STATES MAGISTRATE JUDGE**